No. 17,740.

THE NEW BRANTNER EXTENSION DITCH COMPANY *v.*
GEORGE FERGUSON, ET AL.

(307 P. [2d] 479)

Decided February 11, 1957.   Rehearing denied March 11, 1957.

Messrs. GAUNT & BYRNE, Mr. GLEN G. SAUNDERS, for plaintiff in error.

Mr. J. D. PENDER, Mr. STEWART A. SHAFER, Mr. WM. R. NEWCOMB, for defendants in error.

504

*En Banc.*

Mr. Justice Day delivered the opinion of the Court.

Plaintiff in error The New Brantner Extension Ditch Company, a corporation, was defendant in the trial court and will be referred to as defendant or as the Ditch Company. The suit was instituted by seven individual plaintiffs, defendants in error, to recover damages to their respective farm lands as the result of a flood on Memorial Day, 1948, and likewise to enjoin defendant from maintaining its diversion dam which plaintiffs alleged caused the damage and which they contend, will unless removed or otherwise reconstructed, cause damage to their lands in the future. Trial on the issue of damages was to a jury. At the conclusion of three weeks of testimony the jury returned separate verdicts in favor of each of the plaintiffs in varying amounts which are not important here. Defendant filed a motion for new trial which was denied, and the court at the same time denied plaintiffs' prayer for an injunction. The Ditch Company seeks reversal of the judgments entered against it on the verdicts of the jury. The plaintiffs assign error on the refusal of the court to issue the injunction.

The record before us is exceedingly voluminous, both as to testimony and exhibits. Counsel for the Ditch Company have assigned numerous alleged errors. Only one of these we need consider to enable us to dispose of the entire matter, namely that the court erred in denying defendant's motion for a directed verdict.

Defendant Ditch Company, at the conclusion of the plaintiffs' case, moved the court for dismissal of plaintiffs' complaint on the ground that the evidence was insufficient to sustain a judgment for plaintiffs.

The facts, as they appear from the record, are briefly as follows: The New Brantner Extension Ditch Company is a mutual organization of sixty farmers. For a great many years the predecessors of the present com-

pany and the new corporation which is defendant in this suit have maintained a diversion dam across the Platte River to divert irrigation water into the ditch which serves the 6300 acres of land owned by the sixty stockholders. As time passed the original diversion dam ceased to serve its purpose, and in 1947 a new concrete dam with a 165 foot cement roll across the river and a 30 foot sluice gate was constructed. It is not disputed that defendants had a right to build the dam at its present location. Therefore, if the plaintiffs are to recover it is necessary for them to establish by competent evidence that the overflowing and damage to their lands by the flash flood of 1948 was proximately caused by some wrongful act of the defendant; either in doing that which it should not have done, or the doing of something which it had a right to do in an unlawful manner. In their complaint plaintiffs allege that the "dam was wrongfully and improperly constructed higher than was necessary for supplying said ditch with its appropriations of water, and without adequate facilities or openings for the flow of said sand, silt, gravel and debris downstream in times of high water, floods or freshets, which said obstruction in said river caused the sand, silt, gravel and debris above the same to accumulate in the river bed to a much greater depth than ever existed prior to the construction of said dam." The evidence at the trial disclosed that the dam was constructed at the same level as the prior dam, and there was no evidence that it was higher than necessary. As to whether sand, silt, gravel and debris had been deposited in the stream bed behind the dam "to a much greater depth than ever existed prior to the construction of said dam" so as to cause a flood seven-eighths of a mile upstream as claimed by plaintiffs, rests upon pure conjecture and speculation. There was no competent evidence in the record upon which a jury could make such determination. There is voluminous evidence of engineering data accumulated in a survey made four years and five years after the

flood. But the engineer who testified did not have data of conditions prior to the year 1948 upon which a conclusion could be drawn that the amount of sand, silt and gravel in the year 1948 was greater than it was in the year 1947. The engineering data did establish the amount of accumulation of silt and gravel in 1952 and 1953 which was there to be seen and measured. In 1948 the dam had been in place only a year. Whether in that period of time it caused an accumulation of sand and gravel so great as to fill the channel from bank to bank and to such an extent as to appreciably reduce the carrying capacity of the river was not even capable of reasonable conjecture. Pictures taken in 1952 and exhibited to the jury had no probative value in establishing conditions in 1948 and could do little more than confuse the jury as to the true condition then existing. The testimony of the engineer who made the survey and compiled the data in 1952 and 1953 was predicated upon assumptions which were not of record, or which were contrary to the record. An example of the latter was a conclusion based on the assumption that the new dam was one foot higher than the old dam. The construction data shows it to be the same height. A reading of the engineer's testimony also shows that he testified to conclusions predicated upon "the testimony in the case" without reference to the particular testimony upon which his conclusions were based. In such circumstances neither the court nor the jury could determine whether his conclusions were upon competent and material evidence.

▪ Evidence was received at the trial in an attempt to establish comparative water tables on lands of certain of the plaintiffs who were not claiming damages by reason of an increase in the water table. On the other hand, the plaintiff Albert Marty was awarded a verdict for damages because of an alleged rise in the water table on his land although no comparative data was offered upon which to sustain the allegations of the complaint

with respect to his land. Plaintiff Marty's land had been seep land since 1909, and no evidence was introduced indicating the level of the water table in 1947 or in 1948. Measurements were made by the engineer in four test holes in 1952, but there were no water elevation readings on test holes made before the dam was constructed. The introduction of evidence of comparative water tables on other lands which was totally irrelevant and incompetent as to the particular plaintiff involved could well have confused the jury and caused it to draw unwarranted conclusions upon which to predicate their verdict on the Marty claim. Here also a causal connection between the rise, if there was one, and wrongful conduct of defendant was not demonstrated. There was no competent evidence to support this claim.

The testimony was that the water table varied from place to place and season to season, and would be high in the spring and low in the fall; it would depend upon the run-off of the Platte River, and when the water is high in the river, it was also high on some of the plaintiffs' lands. There had always been a diversion dam and the difference claimed between the present dam and the previous one is that the first dam had flood gates which gave way at high water and permitted the river to scour itself of sand and silt. It is clear that at all times since the late 1800's some water was backed up behind the diversion dam during the high run-off periods, otherwise it would not divert into the ditch.

The claim of William Grover, who alleged damages because the river had changed its channel creating an island out of his land is also without support in the evidence. There was evidence received in the form of photographs made in 1953 showing that the river did make a new channel, but there was no evidence that the diversion dam caused the river to make the new channel.

The mere happening of an event — either the flooding of some of the plaintiffs' lands, a rise in the water table in other plaintiffs' lands, or the change of

the river channel adjacent to and through another plaintiff's land — does not raise a presumption that these events were caused by the defendant's dam. Much of this land, some of it owned by one of the plaintiffs since 1918, had a history of periodic floods since the 1920's. There was no evidence that the diversion dam, the crest of which was twelve feet below the top of the dike built by the plaintiff Ferguson to protect his land from the river, caused the water to back up to a height sufficient to overflow the dike and cause it to wash out. The claim that the carrying capacity of the river channel had been so reduced as a result of accumulation behind the dam as to fail to confine the flood waters of 1948 was pure conjecture because there was no competent data as to the depth and width of the channel prior to 1952, and, consequently, no data as to what the carrying capacity of the river channel was in 1948 at the point where plaintiff Ferguson's dike was washed out. There also was no data as to the number of second feet of water which passed the dike of plaintiff Ferguson at the time of the flood, and whether a channel and dike of any size could have contained it.

There was evidence that the water first found its way through the dike by way of a hole one foot below the crest of the dike, which then washed out to greater width as it would do when weakened by the first break. This physical fact, although opposed by the testimony of the engineers, presents nothing more than an opportunity to speculate upon the cause of the damage and, in our opinion, is not a proper question for jury determination. The court should not have permitted the jury to speculate upon what caused the dike to give way.

As we have indicated above, the evidence was wholly insufficient to support a judgment for plaintiffs on the 1948 damages. However, evidence as to the conditions in 1953 and as of the date of the trial was in conflict as to whether it was necessary for the court to enjoin the defendants from further maintaining their dam

or should issue mandatory injunction to require alterations. The court having resolved the question of the injunction against the plaintiffs on disputed evidence, we will not disturb that judgment, as we have said many times.

The judgment of the trial court is reversed and the cause remanded with directions to dismiss the complaint.

MR. JUSTICE HOLLAND does not participate.